570 So.2d 668 (1990)
Etta E. DUNNING and Jan Judkins
v.
George REYNOLDS, as Probate Judge of Jefferson County, et al.
89-1758.
Supreme Court of Alabama.
October 10, 1990.
Cellie W. Miller of Barnes, Dunning & Miller, and Jerome Tucker, Birmingham, for appellants.
Edwin A. Strickland, Birmingham, for appellees George Reynolds and Polly Conradi.
Michael L. Edwards of Balch & Bingham, Birmingham, for appellee Jeff Germany.
Gregory H. Hawley of Maynard, Cooper, Frierson & Gale, and James L. North, Birmingham, for appellees John Baker and the Democratic Party of Alabama.
Terry McElheny, Birmingham, for appellee Sheriff Mel Bailey.
Richard F. Allen of Capell, Howard, Knabe & Cobbs, Montgomery, for amicus curiae Secretary of State Perry A. Hand.
PER CURIAM.
Etta Dunning and Jan Judkins appeal from an order dismissing their complaint seeking a declaratory judgment and a writ of mandamus to have Jeff Germany's certificate of nomination revoked and his *669 name removed from the general election ballot. The trial judge dismissed the complaint ex mero motu for lack of jurisdiction. We affirm.
The complaint avers that on May 23, 1990, petitioner Jan Judkins filed a formal complaint with the Jefferson County Democratic Executive Committee challenging the qualifications of Germany. The record fails to show affirmatively that petitioner exhausted her remedies before the State Democratic Executive Committee prior to filing the instant action. Therefore, we find no error in the trial court's order of dismissal. Ex parte Skidmore, 277 Ala. 221, 168 So.2d 483 (1964).
AFFIRMED.
HORNSBY, C.J., and JONES, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
The sole question presented in this expedited appeal is whether this Court will enforce the penalty provisions of the Fair Campaign Practices Act of 1988, relating to disclosure of contributions made after a person becomes a candidate for election.
The specific legal question presented is whether a circuit court has jurisdiction of a declaratory judgment action seeking a determination of whether a political candidate for a local office could be certified as the nominee of his party when he had failed to comply with the provisions of Ala.Code 1975, § 17-22A-4, which require that "[w]ithin five days after [a] person becomes a candidate, such person shall file with the secretary of state or judge of probate ... a statement showing the name of not less than two nor more than five persons elected to serve as the principal campaign committee for such candidate."[1]
The complaint here reads, as follows:
"Come now Etta E. Dunning and Jan Judkins, petitioners herein, by and through their attorneys, the Honorable Cellie W. Miller and the Honorable Jerome Tucker, and move this Honorable Court for Declaratory Judgment and an Order Directing all Electing Officials to refuse to issue a certificate of election or nomination to Jeff Germany as the Democratic Nominee for Jefferson County Commissioner for Jefferson County Commission District One or to revoke any certificate of election or nomination heretofore issued to Jeff Germany as the Democratic Nominee for Jefferson County Commissioner for Commission District One and to exclude Jeff Germany's name from the November 1990 General Election Ballot, and further to direct that Etta E. Dunning be issued a certificate of election or nomination as the Democratic Nominee for Jefferson County Commissioner for Jefferson County Commission District One, and for cause would show the following:
"1. Petitioner Etta E. Dunning duly qualified as a Democratic candidate for the June 5, 1990 Primary Election and the June 26, 1990 Primary Run-off Election for nomination for a seat on the Jefferson County Commission as the Commission's District One Commissioner.
"2. Jeff Germany announced his candidacy for the position of Jefferson County Commissioner, District One on October 10, 1989, and thereafter accepted campaign contributions in his bid for election to said office.
"3. Jeff Germany failed to name his principal campaign committee within five (5) days after becoming a candidate for the Democratic nomination for the office of Jefferson County Commissioner, District One in violation of the Fair Campaign Practices Act of Alabama.
"4. Jeff Germany filed a Summary of Contribution and Expenditures report on January 31, 1990, which stated that he received total contributions of $10,750.00 during the period October 17, 1989 and January 26, 1990, a copy of said report is *670 attached hereto and incorporated by reference herein as Exhibit `A'.
"5. On or about April 4, 1990, Jeff Germany filed documents with the Jefferson County Democratic Party and the Jefferson County Probate Court to qualify as a Democratic candidate for Jefferson County Commissioner, District One.
"6. On April 20, 1990, Jeff Germany filed a pre-election report in Jefferson County Probate Court which listed contributions well in excess of $1,000.00 during the period March 15, 1990 and April 2, 1990, a copy of said report is attached hereto and incorporated by reference herein as Exhibit `B'.
"7. Mr. Germany did not name his principal campaign committee until April 10, 1990, a copy of said appointment is attached hereto and incorporated by reference herein as Exhibit `C'.
"8. On May 23, 1990, Petitioner Jan Judkins, a resident citizen of Jefferson County, Alabama and a registered voter in Jefferson County Commission District One filed a formal complaint with the Jefferson County Democratic Party which requested that Jeff Germany's name be removed from the ballot and further that he not be certified as the winner of the primary election should his name not be removed from the ballot, a copy of said complaint is attached hereto and incorporated by reference herein as Exhibit `D'.
"9. The Democratic Party of Alabama failed to take appropriate action in that it failed to remove Jeff Germany's name from the ballot and it failed to refuse to certify him as the party's nominee for Jefferson County Commissioner, District One despite their knowledge of his failure to comply with the Alabama Fair Campaign Practices Act.
"10. Your petitioners bring this action on their individual behalf and on behalf of the citizens of Jefferson County Commission District One and aver that they have no adequate remedy at law and are in need of the protection of this Court and therefore demand an immediate hearing and redress in this Honorable Court.
"Wherefore, premises considered, your petitioners pray that this Honorable Court will take jurisdiction of this cause and will issue an order directing the respondents to appear before this Honorable Court to answer the allegations of your petitioners filed herein and upon a final hearing direct that Jeff Germany not be issued a certificate of election or nomination or in the event a certificate of election or nomination has been issued to said candidate that said certificate of election or nomination be ordered revoked, and his name be excluded from the November, 1990 General Election Ballot and further direct that Etta E. Dunning be issued a certificate of election as the Democratic Nominee for Jefferson County Commissioner for Jefferson County Commission District One, [and] petitioners further pray for such other, further or different relief to which they may be entitled."
The trial court, apparently on its own motion, on August 2, 1990, entered the following order:
"It has come to the attention of the Court that the above-styled case has been assigned to it. Since this case involves a contest of a primary election, the Court finds that, based upon the ruling of the Alabama Supreme Court in Ex parte Baxley, 496 So.2d 688 (Ala.1986), the Court has no jurisdiction to hear the case.
"It is, therefore, ordered, adjudged and decreed by the Court as follows:
"ONE: This case is dismissed for want of jurisdiction.
"TWO: The costs of this action are taxed to the Petitioners.
"Done and ordered this 2nd day of August, 1990.
 "s/ Jack D. Carl
 "Circuit Judge"
The majority, in affirming the action of the trial court, states, in part, that
"The complaint avers that on May 23, 1990, petitioner Jan Judkins filed a formal complaint with the Jefferson County Democratic Executive Committee challenging *671 the qualifications of Germany. The record fails to show affirmatively that petitioner exhausted her remedies before the State Democratic Executive Committee prior to filing the instant action. Therefore, we find no error in the trial court's order of dismissal. Ex parte Skidmore, 277 Ala. 221, 168 So.2d 483 (1964)."
I think that the complaint is sufficient to state a claim under the provisions of the Rules of Civil Procedure, because I am of the opinion that the trial court had jurisdiction of the complaint, and could have enforced the sanctions of the Fair Campaign Practices Act, without first filing a proceeding before the democratic executive committee. To vest in a political party the absolute power to enforce the sanctions, in my opinion, fails to carry out legislative intent. It is my opinion that the legislature, in adopting the Fair Campaign Practices Act, and in providing serious penalties for its violation, including the filing of criminal proceedings against a person who violates it, never intended that a political party would be able to judge whether the Act, in fact, had been violated. In this case, the plaintiffs claim that the party has illegally certified Jeff Germany as the nominee of that party. That is a justiciable controversy which a circuit court clearly has the power to resolve. I do not believe that a circuit court is powerless to order the probate judge of a county not to place the name of a defaulting candidate on the November general election ballot. This Court, by divesting the trial court of jurisdiction, in my judgment, fails to follow prior precedents of this Court, which squarely hold to the contrary. Consequently, I am compelled to dissent.
The facts of this case are not seriously disputed. The pertinent facts upon which I base my dissent are contained in the complaint of the plaintiffs which I have quoted above.[2]
My conclusion that the Court errs is based upon my interpretation of what the legislature intended when it adopted the Fair Campaign Practices Act in 1988. That Act made some major changes in the law regarding disclosures that must be made by candidates, and when they must be made. By defining when a person becomes a "candidate," the law effected a major change in the time when a candidate must file the statement which Germany allegedly failed to timely file in this case.
Ala.Code 1975, § 17-22A-21 defines "candidate" as follows:
"(1) CANDIDATE. An individual who has:
"a. Taken the action necessary under the laws of the state to qualify himself or herself for nomination or for election to any state office or local office or in the case of an independent seeking ballot access, on the date when he or she files a petition with the probate judge in the case of county offices or the secretary of state in all other cases; or
"b. Received contributions or made expenditures, or given his or her consent for any other person or persons to receive contributions or make expenditures, with a view to bringing about his or her nomination or election to any state office or local office. Provided, however, that no person shall be considered a candidate within the meaning of this subdivision until such time as he or she has either received contributions or expenditures as provided herein in the following amounts:
"1. Ten thousand dollars or more, with a view toward bringing about nomination or election to any state office other than one filled by election of the registered voters of any circuit or district within the state;
"2. Three thousand dollars or more, with a view toward bringing about nomination or election to any state office filled by election of the registered voters of any circuit or district; and
"3. One thousand dollars or more, with a view toward bringing about nomination or election to any local office."
*672 Based upon my reading of the complaint, the plaintiffs allege that Germany became a "candidate," within the meaning of the Act when he received contributions of more than $1,000.00. If those allegations are true, and as I understand the law of pleading, they must be taken as being true on a motion to dismiss, Germany failed to file the statement required by the Act. If Germany failed to file the statement timely, he was in the same boat with other candidates failing to file timely in this year's elections.[3]
Admittedly, the disclosure requirements of the Fair Campaign Practices Act are strict, and the penalty provisions of the Act are harsh, but I am totally convinced that the legislature, right or wrong, intended to make the Act tough, intended to tighten up the reporting requirements for candidates, and intended to make the penalty severe.
As the majority points out, the record does show that Dunning first filed a challenge of Germany's right to be a candidate with the Jefferson County Democratic Executive Committee, but I cannot see how that would foreclose her from insisting on her right to have Germany's nomination revoked under the provisions of § 17-22A-21, which provide:
"A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this chapter. A certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked."
Dunning and Judkins, in their declaratory judgment action, asked, among other things, that the judge of probate be directed not to certify Germany's name as the Democratic nominee because of Germany's failure to comply with the provisions of the Fair Campaign Practices Act.
As above stated, the trial court dismissed the declaratory judgment proceeding on the ground that it lacked jurisdiction, citing as authority for the dismissal this Court's decision in Ex parte Baxley, 496 So.2d 688 (Ala.1986), a case in which a candidate for Governor in the Democratic primary claimed that the winner of the primary election had received illegally cast votes.
Apparently, the trial judge considered that the appellants were contesting the election in the same manner as Baxley had done in Ex parte Baxley. I think the trial court erred in this respect, but in any event, the appellants should not have their complaint dismissed. It is clear to me that they were entitled to get at least a declaration of their rights. In the past, this Court has entertained such actions and has strictly enforced provisions of law similar to those which are involved here.
Herndon v. Lee, 281 Ala. 61, 199 So.2d 74 (1967), is just such a case. There, Thomas F. Gilmore was named as a candidate for sheriff in a mass meeting of the Greene County Freedom Organization ("The certificate had on its back a drawing which resembles a black panther"). Gilmore, like Germany, failed to file with the probate judge a statement designating a committee to receive and disburse campaign funds as required by § 274, Title 17, Code 1940, as amended. Gilmore, like Germany, later attempted to refile his declaration of candidacy and file contemporaneously therewith the required statement. The Democratic nominee for sheriff filed an action in the circuit court, just as Dunning has done here, in which he sought to have the court enjoin the probate judge from certifying the name of Gilmore as a candidate for sheriff, the same relief Dunning requested in her declaratory judgment petition.
This Court succinctly stated the law:
"In two cases, we have already decided that the name of a candidate shall not be allowed to go on the ballot if the candidate *673 fail to comply with the requirements of §§ 274 and 275, Title 17, by filing a statement declaring the name of the committee to receive and disburse campaign funds within five days after the announcement of his candidacy. Jones v. Phillips, 279 Ala. 354, 185 So.2d 378; Owens v. Heartsill, 279 Ala. 359, 185 So.2d 382.
"It is clearly apparent that Gilmore did not file the required statement within five days after May 3, 1966, the day on which the mass meeting certificate was filed."
281 Ala. at 64-65, 199 So.2d at 76-77.
Thomas Gilmore was not allowed to have his name on the general election ballot in 1966. In Jones v. Phillips, 279 Ala. 354, 185 So.2d 378 (1966), the candidate strenuously argued that the provisions of law relating to the filing of the statement required by § 274 of Title 17, Code 1940, were directory merely. This Court answered that argument as follows:
"What is now Tit. 17, §§ 274 and 275 were enacted in 1915, and Sec. 275 has not been amended. But in 1959, the legislature, of which appellant was a member, amended the five-day provision in Sec. 274. The legislature wanted to spell out clearly what the five-day limitation meant and this new sentence was added to Sec. 274: `If the statement required herein shall have been postmarked at any United States post office not later than midnight of the fifth day after the announcement of his candidacy, the candidate shall be deemed to have complied with the requirements of this section as to filing such statement within five days after the announcement of his candidacy.
"And in the first sentence of the section, the legislature made it crystal clear that even though state representatives and senators were state officers, they should file these statements, not only with the Secretary of State, but with the judges of probate in the counties or districts in which they were running. Prior to this amendment, there had been some question as to whether candidates for the legislature were required to file the statements in the counties, but this amendment dispelled all doubt on this subject.
"This court has already held that the filing provisions under these statutes are mandatory before elections. In McCutcheon v. Thomas, 261 Ala. 688, 75 So.2d 649, we said:
"`We are fortified in taking the aforesaid view of the statute by our cases which hold that violations of the corrupt practice act will be construed as mandatory prior to the election in a direct proceeding but only directory after the election. In Garrett v. Cuninghame, 211 Ala. 430, 100 So. 845, 853, this court in commenting on the case of Patton v. Watkins, 131 Ala. 387, 31 So. 93, 90 Am.St.Rep. 43, quoted from Judge Freeman in his comprehensive note reported in 90 Am.St.Rep. 43, 49, as follows:
"`"All the provisions of the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose, but after election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void."' * * *"
"As already noted, Tit. 17, §§ 274 and 275, have been the law in Alabama for fifty-one years. Thirty years ago, the same question involved here was asked of the Attorney General by the Probate Judge of Madison County, and the construction of the statute at that time was that the name of the candidate failing to comply with Sec. 274 (then Sec. 588, Code 1923) should not go on the ballot. Biennial Report of Opinions of the Attorney General, 1934-1936, p. 610. The legislature reenacted the statute in 1940, and again in 1959, with clarifying amendments *674 as to requirements of members of the legislature and the measurement of the five-day period."
279 Ala. at 357-58, 185 So.2d at 380-81.
Arguing pro se before this Court, Jones claimed that an affirmance of the trial court's decree, which had enforced the penalty provisions of the Corrupt Practices Act, "would mark him as being `corrupt' and that his future career might be hurt if he was always to be branded `corrupt'." This Court responded:
"There is no charge or finding here that appellant is corrupt. He did no more than overlook a mandatory rule which applied to his qualifying as a candidate for public office in a party primary. He overlooked the filing of a necessary paper within the statutory period allowed, but this was no more `corrupt' than is a person who overlooks the scheduled departure of a train or plane and thereby misses his trip or connection."
279 Ala. at 358, 185 So.2d at 381.
In Owens v. Heartsill, 279 Ala. 359, 185 So.2d 382 (1966), Guy Owens failed to follow the requirements of law, just as Jones had done. He also was not allowed to be a candidate for the legislature.
In Jones and Owens, the court challenges appear to have been made before the primary election there, but in Herndon v. Lee, the challenge was made by the democratic nominee to keep an opponent's name off the general election ballot.
The Fair Campaign Practices Act specifically provides that a "certificate of election or nomination already issued to any person elected or nominated to state or county office ... shall be revoked." (Emphasis added). The legislature used the word "shall," and also said that an election or nomination not only could be set aside, but must be set aside. The majority errs by failing to give force to these penalty provisions of the 1988 Act.
By dissenting in this case, I should not be understood as passing judgment on the qualifications of either Mr. Germany or Ms. Dunning to serve as a county commissioner, nor to each candidate's good faith in seeking a resolution of the matter. Based upon my research, however, I believe that the plaintiffs did state a cause of action and I would not affirm the trial court's dismissal of their complaint.
Admittedly, if plaintiffs could prove their allegations, the result I would reach is harsh, but I think that the legislature intended for the result to be harsh. I must assume that the legislature, at the time it passed the Fair Campaign Practices Act, was aware of how the enforcement provisions of our prior law had been applied in Jones and Owens. In short, I think that the legislature deliberately intended to tighten up disclosure provisions of the law.[4]
There were attempts made when the Fair Campaign Practices Act was going through the legislature to amend it and lessen the harshness of the penalty provisions,[5] but the legislature refused to accept the amendment, and left intact those penalty provisions of the Act that are now contained in § 17-22A-21.
The penalty provisions of our law were enforced against Thomas Gilmore, J. Fletcher Jones, and Guy Owens not because any of them was "corrupt," but because, in each case they failed to follow, or overlooked, a mandatory requirement of law that applied to each candidacy for public office.
Justice Merrill in Jones v. Phillips, likened such failure to file to "overlook[ing] the scheduled departure of a train or plane and thereby miss[ing] his trip or connection." *675 279 Ala. at 358, 185 So.2d at 381. I think Mr. Germany missed his flight. I would reverse.
NOTES
[1] Section 17-22A-4 also allows a candidate to name himself or herself as the principal campaign committee.
[2] The parties, in their briefs, have essentially agreed on other facts, but I do not need to refer to them in showing that the trial court should not have dismissed the plaintiffs' complaint.
[3] Megginson v. Turner, 565 So.2d 247 (Ala. 1990), represents such a challenge, and this Court did not question its jurisdiction in the case, which it clearly had a right to do ex mero motu. Also, I can take judicial notice of the fact that other candidates were also challenged for failure to follow the same provisions of the Fair Campaign Practices Act with which Germany failed to comply.
[4] It is a matter of common knowledge that the public is interested in the source of campaign contributions to candidates for public office.

Before the adoption of the new Act, persons who were avowed candidates could campaign, receive contributions, and make disbursements without having to report them, if the contributions were made before they officially declared their candidacy. Under the old law, candidates could wait until near the last day of the qualifying period to file their declaration of candidacy and would then not have to list contributions they had received before that date. The new law changes that.
[5] See Senate Journal, 1988 1st Extraordinary Sess., at 516-22.